CROWN CENTRAL PETROLEUM CORPORATION and United Refining Company, Plaintiffs,

Hawaiian Independent Refinery, Inc., Plaintiff-Intervenor,

v.

FEDERAL ENERGY ADMINISTRATION and Frank G. Zarb, Defendants.

Civ. A. No. 76–263.

United States District Court, District of Columbia.

March 18, 1976.

---

Neal M. Mayer, Paul D. Coleman, Washington, D. C., Charles L. Haslup, III, Severna Park, Md., for plaintiff.

Ben W. Cotten, James M. Day, Washington, D. C., for intervenor plaintiff.

Marvin L. Coan, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This declaratory judgment action comes before the Court on the merits. It presents a pure question of statutory construction which was fully briefed and argued.

The controversy arises against the background of the Entitlements Program and two-tier system for pricing oil which was initiated by the Cost of Living Council as part of its Stabilization Program under the Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 note. *See Cities Service Co. v. FEA*, Em.App., 529 F.2d 1016 (1975); *Pasco, Inc. v. FEA*, Em.App., 525 F.2d 1391 (1975); and *Consumers Union v. Sawhill*, Em.App., 525 F.2d 1068 (1975).

Recently the Energy Policy and Conservation Act (EPCA), 89 Stat. 871, Pub.L. No. 94–163, 42 U.S.C. § 6201 note, expressly exempted small refiner entitlement buyers which satisfy certain enumerated criteria from the obligation to purchase entitlements on their first 50,000 barrels per day of input or receipts. In particular, § 403 of EPCA reads as follows:

(a) Section 4 of the Emergency Petroleum Allocation Act of 1973 [15 U.S.C. § 753], as amended by this Act, is further amended by adding at the end thereof the following:

"(e) Any provision of the regulation under subsection (a) of the section—

"(1) Which requires the purchase of entitlements, or the payment of money through any other similar cash transfer arrangement, the purpose of which is to reduce disparities in the crude oil acquisition costs of domestic refiners, and

"(2) which is based upon the number of barrels of crude oil input, or receipts, or both, of any refiner,

shall not apply to the first 50,000 barrels per day of input, or receipts, or both, of any refiner whose total refining capacity (including the refining capacity of any person who controls, is controlled by, or is under common control with such refiner) did not exceed on January 1, 1975, and does not thereafter exceed 100,000 barrels per day. The preceding sentence shall not affect any provisions of the regulation under subsection (a) of this section with respect to the receipt by any small refiner as defined in section 3(4) of payments for entitlements or any other similar cash transfer arrangement."

(b) Subsection (a) of this section shall apply with respect to payments due on or after the last day of the month during which the date of enactment of this Act occurs.

■■■ The Federal Energy Administration promptly implemented this statutory exemption through the adoption of Special Rule No. 6, 41 Fed.Reg. 1044 (January 6, 1976), to the Entitlements Program regulation, 10 C.F.R. § 211.67. In this Special Rule, FEA stated it was taking into account the small refiner buyer exemption in precisely the same manner as it accounted for all prior administrative exemptions awarded to entitlement purchasers through decisions of FEA's Office of Exceptions and Appeals. That is, the Special Rule provides that the exemption is "given effect in the calculations under § 211.67 by proportionately increasing entitlement purchase and reducing entitlement sale obligations." 41 Fed.Reg. 1044, 1045 (January 6, 1976).

It is contended by plaintiffs that this reduction of benefits from sale of entitlements is contrary to § 403(a) of EPCA. Focusing on the last sentence of that provision, plaintiffs argue essentially that the small refiner buyer exemption must be put into effect in such a way so as not to diminish the maximum amount of revenue which small refiner sellers of entitlements would have otherwise received if the small refiner buyer exemption had never been implemented.

This position must be rejected for the following reasons:

(1) The provision by its terms is not so worded. Read in syntax, it refers only to the effect of the statutory amendment on "provisions of the regulations," not to the effect on the amount of money received by small refiner entitlement sellers. Moreover, it is only a generalized statement. It speaks only of "receipts" of payments of some kind as opposed to "receipts" of the same payments as would have been made absent the purchase exemption for small refiners. If Congress had intended as plaintiffs suggest, it could readily have said so.

■■ (2) No committee report deals directly with the meaning of the last sentence of § 403(a), and the legislative history is confused and lacks precision. However, its main thrust is supportive of the interpretation noted above. The legislation was extensively considered in conference and the Senate-House Conference Committee Report did state that the conference substitute followed the provisions in the House amendment. (S.Rep. No. 94–516, 94th Cong., 1st Sess. 199 (1975)). The House Report on the House version had clearly stated:

> The Committee wishes to make clear its intent that any entitlements exempted by this Section shall be treated just as the FEA now treats entitlement purchasers which it has excepted through administrative procedures, i.e., by disregarding the old oil to which such entitlement purchases would apply when calculating the National Adjusted Old Oil Supply Ratio. H.Rep. No. 94–340, 94th Cong., 1st Sess. 48 (1975), U.S.Code Cong. & Admin.News 1975, p. 1810.

The procedure followed by FEA here under attack is admittedly in strict conformity to the position taken in the House Report just quoted. This legislative history sequence appears the most authoritative among many scattered references and is entitled to special weight when opposed to Senate discussions of an earlier bill, ex post facto letters or remarks of an ambiguous kind made in floor debate, *American Airlines, Inc. v. CAB*, 125 U.S.App.D.C. 6, 365 F.2d 939 (1966).

(3) At stake is the measure of the benefits to be received by small refiners. These benefits are substantial under either interpretation and hence it cannot be said that one view is superior to the other, given the acknowledged desire of the Congress to assist the smaller refiners. In a matter of degree only, the position of the agency having special experience in the area, coupled with an indication that the experience under the recent amendments as interpreted will be monitored and possibly subject to

adjustment,* are factors which weigh in the balance against plaintiffs' position, given the special nature of the problem presented.

FEA has correctly interpreted the statutory provision in issue.

Judgment for the defendants.

SO ORDERED.

---

* Special Rule No. 6 may be revised pursuant to a rulemaking proceeding that is currently under way. 41 Fed.Reg. 9391, March 4, 1976 ("Modi- fication of Small Refiner Purchase Exemption Under Entitlements Program," issued February 28, 1976).